**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

PRIME MATERIALS RECOVERY, INC.,

                              Plaintiff,                    5:19-cv-00561 (BKS/TWD)

v.

J.J.R. PROPERTIES OF NEW YORK, LLC
and CERTAIN UNDERWRITERS AT LLOYD'S
LONDON SUBSCRIBING TO CERTIFICATE
NO. GEP 9871-17,

                              Defendants.

**Appearances:**

*For Plaintiff:*
John P. Wegerski, III
Wegerski Law Firm
9663 Brewerton Road
Brewerton, New York 13029

Aaron A. Romney
James M. Moriarty
Zeisler & Ziesler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604

*For Defendant Certain Underwriters at Lloyd's London Subscribing to Certificate No. GEP 9871-17:*
Lori E. Petrone
Kenney Shelton Liptak Nowak, LLP
233 Franklin Street
Buffalo, New York 14202

Michael S. Savett
Clark & Fox
951 Haddonfield Road, Ste. A-2B
Cherry Hill, NJ 08002

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff Prime Materials Recovery, Inc. ("PMR") brings this diversity action against Defendants J.J.R. Properties of New York, LLC ("JJR") and Certain Underwriters at Lloyd's London Subscribing to Certificate No. GEP 9871-17 ("Underwriters").[1] The Amended Complaint alleges that JJR engaged in conversion of PMR's property (First Cause of Action), breached its lease with PMR (Third Cause of Action), and was negligent (Fifth Cause of Action). It also alleges that Underwriters aided and abetted JJR's conversion (Second Cause of Action) and engaged in tortious interference with PMR's lease with JJR (Fourth Cause of Action). (Dkt. No. 21). Presently before the Court is Underwriters' partial motion to dismiss Plaintiff's tortious interference claim (Fourth Cause of Action) under Federal Rule of Civil Procedure 12(b)(6), (Dkt. No. 24), which Plaintiff opposes. (Dkt. No. 38). For the reasons that follow, Defendant Underwriters' ("Defendant's") motion to dismiss is denied.

**II.    FACTS[2]**

Plaintiff is a metal merchant that operates a reprocessing facility in Canastota, New York. (Dkt. No. 21, ¶¶ 10–12). In January 2018, Plaintiff entered into a commercial lease with JJR to lease "approximately ten thousand (10,000) square feet of rentable warehouse space" in Canastota. (Dkt. No. 21-1, ¶ 2). Plaintiff leased this space for storing "reprocessed copper that was intended for resale." (Dkt. No. 21, ¶ 16). The lease "entitled PMR to 'peaceably and quietly

---

[1] The Underwriters identify the correct entity name as "Certain Underwriters Subscribing to Certificate No. GEP 9871-17." (Dkt. No. 1; Dkt. No. 24-1, at 4).

[2] The facts are taken from the Amended Complaint and its exhibit. (Dkt. No. 19). The Court will assume the truth of, and draw reasonable inferences from, those well-pleaded allegations that are nonconclusory and factual. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

have, hold, occupy and enjoy the [leased space] during the term [t]hereof without hindrance by any persons lawfully claiming under Lessor.'" (*Id.* ¶ 15). By March 2018, Plaintiff was storing more than 1.5 million pounds of copper in the leased warehouse (worth approximately $5,000,000). (*Id.* ¶ 19).

According to Plaintiff, JJR "failed to properly maintain" the space and on March 10, 2018 "the roof of the Leased Space collapsed, trapping PMR's copper inventory located within the Leased Space below rubble that had fallen from above." (*Id.* ¶¶ 20–21). JJR notified its property insurer, Defendant, who demanded that the "Leased Space remain untouched, and further threatened to deny [JJR] coverage for the loss if either PMR or [JJR] removed PMR's copper from the premises before [Defendant] conducted an investigation." (*Id.* ¶¶ 22–23).

Plaintiff initially complied with this demand, "believing that [Defendant] would expeditiously complete any investigation, or at the very least would do so within a reasonable time period." (*Id.* ¶ 24). However, "[d]espite the passage of many months, neither [Defendant] nor [JJR] took any action to investigate the loss and they actively precluded PMR from retrieving its copper inventory," (*id.* ¶ 25), despite Plaintiff repeatedly demanding that JJR allow it to retrieve its inventory. (*Id.* ¶ 27). "[C]opper's market price dropped precipitously" during this time period and Plaintiff notified JJR that "it incurred increasing damages with each passing day." (*Id.* ¶¶ 26–27). Despite these demands, Defendant "continuously refused to inspect the Property's collapsed roof, and continuously threatened to deny coverage to [JJR] for damage to the Property if [JJR] permitted PMR to retrieve its copper inventory." (*Id.* ¶ 28).

On May 31, 2018, Plaintiff removed 1,104,599 pounds of copper from the property, but JJR intervened and stopped it from removing the remaining copper. (*Id.* ¶ 29). Plaintiff continued to demand that JJR allow it to retrieve its remaining copper. (*Id.* ¶ 30). JJR continuously refused,

"citing [Defendant's] threats to deny coverage if anyone disturbed the rubble that covered Plaintiff's remaining copper inventory." (*Id.*).

Defendant conducted an examination of the collapsed roof on September 6 or 7, 2018. (*Id.* ¶ 32). JJR and Defendant continued to "preclude PMR from entering the Leased Space or retrieving its copper inventory" and on September 13, 2018, JJR informed Plaintiff that Defendant "ha[d] not released the property." (*Id.* ¶ 32). On September 15, 2018, Plaintiff attempted to retrieve the inventory but was stopped by JJR. (*Id.* ¶ 33).

Plaintiff was permitted to retrieve its remaining inventory on October 5, 2018. (*Id.* ¶ 34). Between the date the roof collapsed and the final retrieval of the inventory, the price of copper had dropped from $3.10 per pound to $2.75 per pound. (*Id.* ¶ 35).

## III. STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). When deciding a motion to dismiss, the Court's review is ordinarily limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents

incorporated in the complaint by reference." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

## IV.   DISCUSSION

Under New York law, tortious interference with contract requires: "(1) the existence of a valid contract between the plaintiff and a third party, (2) defendant's knowledge of that contract, (3) defendant's intentional procurement of the third-party's breach of the contract without justification, (4) actual breach of the contract; and (5) damages." *Rich v. Fox News Network, LLC*, No. 18-cv-2321, 2019 WL 4383204, at *10, 2019 U.S. App. LEXIS 27633, at *26 (2d Cir. Sept. 13, 2019) (quoting *Lama Holding Co., v. Smith Barney Inc.*, 88 N.Y. 2d 413, 424 (1996)).

Defendant moves to dismiss Plaintiff's tortious interference with contract claim on the grounds that Plaintiff has failed to plausibly allege facts supporting the third element of tortious interference. Defendant argues that its actions had "an entirely lawful purpose" because its "claim investigation is derived from a contractual and legal right under the insurance policy issued to JJR" and so Plaintiff has failed to show it intended to interfere with the lease. (Dkt. No. 24-1, at 8). Plaintiff responds that Defendant's "failure to fully investigate JJR's insurance claim for nearly seven (7) months while at the same time threatening to deny coverage if JJR permitted PMR to enter the Lease Space" caused JJR to breach the lease, and it has adequately stated a claim for tortious interference because it is not necessary for it to show that Defendant engaged in illegal action to fulfill the third element. (Dkt. No. 38, at 6–8).

New York courts have acknowledged that tortious interference "can take many forms" and it is an "amorphous category." *NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 87 N.Y.2d 614, 621 (1996). "We have recognized that inducing breach of a binding agreement and interfering with a nonbinding 'economic relation' can both be torts, but that the elements of the two torts are not the same." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 189 (2004). When there is

5

interference with non-binding prospective contract rights, a plaintiff must show "culpable conduct on the part of the defendant." *NBT*, 87 N.Y.2d at 621. This culpable conduct includes "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (1980).

On the other hand, "where there is an existing, enforceable contract and a defendant's deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior." *NBT*, 87 N.Y.2d at 621; *see also Rich*, 2019 WL 4383204, at *12, 2019 U.S. App. LEXIS 27633, at *32 (2d Cir. Sept. 13, 2019) ("To be sure, lawful behavior, by itself, does not suffice to justify tortious interference."). Courts have noted that "[a] defendant intentionally procures a breach when he . . . 'commits an intentional act whose probable and foreseeable outcome is that one party will breach the contract, causing the other party damage.'" *@Wireless Enterprises, Inc. v. AI Consulting, LLC*, No. 05-cv-6176, 2011 WL 1871214, at *11, 2011 U.S. Dist. LEXIS 51973, at *34 (W.D.N.Y. May 16, 2011) (quoting *Leventhal v. Franzus Co., Inc.*, No. 88-cv-3547, 1988 WL 132868 at *7, 1988 U.S. Dist. LEXIS 13651, at *22 (S.D.N.Y. Dec. 6, 1988)); *see also High Falls Brewing Co., LLC v. Bos. Beer Corp.*, 852 F. Supp. 2d 306, 311 (W.D.N.Y. 2011) (citing Restatement (Second) of Torts § 766, comment j (1979)) ("[D]eliberate or intentional interference may be shown where the defendant is certain, or substantially certain, that his actions will result in a breach of the contract.").

In this case, Plaintiff and JJR had a binding lease agreement that Plaintiff alleges Defendant intentionally interfered with when it failed to timely investigate the roof collapse and repeatedly threatened to deny JJR coverage if it allowed Plaintiff to enter. (Dkt. No. 38, at 6–8).

6

Contrary to Defendant's contention, it is not necessary for Plaintiff to allege that Defendant acted unlawfully. *See NBT*, 87 N.Y.2d at 621. The Court notes that a defendant's conduct must be intentional to constitute a tort: New York does not recognize a cause of action for negligent interference with contract, *PAB Aviation, Inc. v. United States*, 169 Fed. App'x 61, 63 n. 2 (2d Cir. 2006). However, considering Defendant's delay in investigating and its insistence that PMR not be allowed to enter its leased property for nearly seven months, drawing all reasonable inferences in Plaintiff's favor, and at this preliminary stage of the case, the Court finds that Plaintiff has alleged sufficient facts to support its tortious interference with contract claim.

Defendant argues that because it was acting for "an entirely lawful purpose," based on its "contractual and legal right" under the insurance policy it issued to JJR, the Court should dismiss the tortious interference claim because this undercuts the requisite intentionality requirement. (Dkt. No. 24-1, at 8). Defendants have not cited any caselaw supporting dismissal here, and their argument asks the Court to improperly assume facts not in the Amended Complaint.[3] The parameters of the insurance agreement between JJR and Defendant were not included in the Amended Complaint. And it is not proper for the Court to assess Defendant's purpose at this stage of the case: the facts are not sufficiently developed to determine whether Defendant acted without justification.

---

[3] Defendant's reliance on *Tri-Star Lighting Corp. v. Goldstein*, 58 N.Y.S.3d 448, 453 (N.Y. App. Div. 2017), is misplaced. There, the court found that "the complaint did not allege that [the defendant-competitor] took action intended to procure [a former employee's] alleged breach of an employment agreement." *Id*. In support, the court cited two cases that are both inapposite to the current case, *Twin City Fire Insurance Co. v. Arch Insurance Group, Inc.*, 39 N.Y.S.3d 144, 146 (N.Y. App. Div. 2016) and *Cantor Fitzgerald Associates, L.P. v. Tradition North America, Inc.*, 749 N.Y.S.2d 249, 249 (2002). The courts in *Twin City Fire* and *Cantor* dismissed tortious interference with contract claims on the basis that the plaintiffs had not alleged sufficient facts to show a causal connection between Defendant's actions and the breach. *Twin City Fire*, 39 N.Y.S.3d at 146; *Cantor*, 749 N.Y.S.2d at 249. In contrast, in this case, Plaintiff has alleged the requisite action and causal connection. Plaintiff alleges that Defendant's repeated insistence, over a seven-month period, that JJR bar access to the premises at issue, was intended to procure JJR's breach of the lease between JJR and Plaintiff. (Dkt. No. 19, ¶ 28).

Accordingly, the Court finds that, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in Plaintiff's favor, Defendant has failed to establish that it is entitled to dismissal as a matter of law.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's Motion to Dismiss (Dkt. No. 24) is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 1, 2019
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge